Case 8:23-cv-02070-JVS-ADS   Document 1-2   Filed 11/01/23   Page 1 of 31   Page ID #:10
Electronically Filed by Superior Court of California, County of Orange, 09/19/2023 06:34:22 PM.
30-2023-01350879-CU-BC-NJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Y. Ramirez, Deputy Clerk.

James S. Sifers, SBN 259105
jsifers@madisonlawapc.com
Alexis A. Jugan, SBN 340699
ajugan@madisonlawapc.com
**MADISON LAW, APC**
17702 Mitchell North
Irvine, California 92614
Telephone: 949-756-9050
Facsimile: 949-756-9060

Assigned for All Purposes
Judge Craig Griffin

Attorneys for Plaintiff Jeriess Boulus

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

JERIESS BOULUS, an individual;

Plaintiff,

v.

ADT, LLC, a Delaware corporation d/b/a ADT
SECURITY SERVICES.; and DOES 1 through 10,
inclusive,

Defendants.

Case No.: 30-2023-01350879-CU-BC-NJC

ASSIGNED FOR ALL PURPOSES:
Hon.
Dept.

**COMPLAINT FOR:**

1. **VIOLATION OF CONSUMERS LEGAL REMEDIES ACT,** *CAL. CIV. CODE* **§ 1750, ET SEQ.**
2. **VIOLATION OF** *CAL. BUS. & PROF. CODE* **§ 17200**
3. **VIOLATION OF SONG-BEVERLY CONSUMMER WARRANTY ACT - BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
4. **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF THE EXPRESS WARRANTY**
5. **NEGLIGENT MISREPRESENTATION**
6. **BREACH OF CONTRACT**
7. **NEGLIGENCE**
8. **NEGLIGENCE – RECALL/RETROFIT**

**[JURY TRIAL REQUESTED]**

COMES NOW Plaintiff Jeriess Boulus, ("Plaintiff") in his Complaint against Defendants ADT,

LLC d/b/a ADT Security Services ("Defendant ADT") and Does 1 through 10, (collectively,

"Defendants"), and alleges as follows:

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 • Fax (949) 756-9060

**PARTIES, JURISDICTION, AND VENUE**

1.      The true names or capacities of all Defendant Does 1 through 10 are unknown to Plaintiff who sues them by such fictitious names under *Cal. Code Civ. Proc.* § 474. Each Defendant Doe caused Plaintiff's injury and damage. Plaintiff will amend the Complaint to allege the true names and capacities of Defendants, whether individual, corporate, associate or otherwise, when the same have been ascertained. Plaintiff is informed and believes and based on that information and belief alleges that each fictitiously named Defendant is in some manner responsible for the damages alleged.

2.      Plaintiff is now, and at all times mentioned herein, an individual residing in the State of California, County of Orange. Plaintiff purchased security monitoring devices and services from Defendant ADT for his home located at 7021 E. Hidden Oaks Lane, Orange, County of Orange, California, 92867 ("Property").

3.      Plaintiff is informed and believes and thereon alleges that Defendant ADT is a Delaware corporation doing business in the State of California, County of Orange.

4.      Plaintiff alleges that each and every Defendant named herein is an agent, employee, employer, and in a joint venture with each other Defendant named herein. Plaintiff further alleges that each act or omission alleged on the part of each Defendant was conducted in the course, scope, and furtherance of the agency, employment and joint venture in which each other Defendant is participating. As such, Plaintiff alleges that each Defendant is vicariously responsible for the acts or omissions of each other employee and had acted in the course and scope of such agency, partnership, or employment.

5.      The term "Defendant," whether used in singular or plural, refers to every Defendant named herein unless that Defendant is specifically named and identified.

6.      Each paragraph in this Complaint is incorporated by reference in each other paragraphs. Each allegation for each cause of action is incorporated by reference in every other cause of action. Despite the labels on the cause of action and section headings and dividers, the Complaint, and the remedies sought are to be read as one unit. To the extent any cause of action stated herein is insufficiently plead, but that such lack of sufficiency can be satisfied by other allegations stated in the Complaint, that other allegation is incorporated by reference into the insufficient cause of action to cure the insufficiency.

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

7.      Plaintiff is informed, believe, and thereon allege that the above-entitled Court is the proper Court for this action and that the amount claimed is in excess of the jurisdictional minimum of this Court.

8.      Venue for this action is proper in this Court, and the Court has personal jurisdiction over Defendant ADT because the harm caused by Defendant ADT as alleged herein occurred within the County of Orange in furtherance of business conducted by Defendant ADT.

## GENERAL ALLEGATIONS

9.      Defendant ADT is a specialty provider of electronic security monitoring devices and services. It offers residential customers a comprehensive set of burglary, video, access control, fire and smoke alarm, and medical alert solutions. Defendant ADT prides itself as having been in the business of providing security services for over 145 years.

10.     In or around November of 2022, Plaintiff, a longtime and repeat customer of ADT, contacted Defendant ADT for the purpose of purchasing and outfitting the Property with a top-of-the-line security system. Defendant ADT markets itself as "America's #1 smart home security provider," which caused Plaintiff, who was interested in a smart home security system, to seek Defendant ADT's services. (ADT (June 18, 2023, 9:17 AM), https://www.adt.com/.)

11.     During Plaintiff's initial discussions with Defendant ADT, Plaintiff represented to Defendant ADT that he wished to have a home security system, installed at his recently purchased · Property. Separate from his request for a home security system, Plaintiff indicated that he wanted Defendant ADT to reactivate and ensure that the camera system, which was installed on the Property prior to Plaintiff's purchase, was in working order.

12.     In response to Plaintiff's inquiries to Defendant ADT, Defendant ADT presented Plaintiff with a variety of home security options for the Property. After assessing the options Defendant ADT provided, Plaintiff ultimately decided to purchase Defendant ADT's ATV 16 Channel Hybrid DVR 4tB Security System with the ATV 2MP IP Vandal Dome ("Security System"). The Security System included, among other things, the installation glass break door sensors on the glass doors and windows of the Property ("Glass Break Sensors"). This was a specific feature that Plaintiff desired given the

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

1   presence of glass in his and his wife's master bedroom.  Plaintiff also inquired as to the installation of
2   motion sensors in the hallways of the Property, as well as the master bedroom.  Defendant ADT agreed
3   that the hallway motion sensors should be installed, but advised Plaintiff that motions sensors in the
4   master bedroom would be unnecessary since the motion sensors in the hallway would alert him and his
5   family to anyone coming into the room and the Glass Break Sensors would alert Plaintiff if anyone
6   gained entry by breaking the glass windows or doors.  Taking Defendant ADT's advice, Plaintiff opted
7   not to install motion sensors in his master bedroom.

8        13.   As a part of his purchase of the Security System from Defendant ADT, Plaintiff opted for
9   Defendant ADT's Standard Monthly Burglary Service package.  This service includes customer
10  monitoring center signal receiving and notification service for burglary, as well as manual fire and
11  police emergency services.

12       14.   Defendant ADT, through its sales representatives, represented to Plaintiff that the
13  Security System and Glass Break Sensors would be able to alert Plaintiff to anyone coming into the
14  Property though broken glass and would alert if anyone gained entry to the Property by breaking the
15  glass windows and/or doors to gain entry through the master bedroom.  Based on the above
16  representations, Plaintiff entered into the Residential Services Contract on or about November 28, 2022
17  ("Contract").  As a part of this Contract, Plaintiff opted to have an ADT professional install the Security
18  System and smart home devices at the Property.  Attached hereto as Exhibit "1" is a true and correct
19  copy of the Contract entered into by Plaintiff and Defendant ADT.

20       15.   On or about December 13, 2022, Defendant ADT caused the Property to be equipped
21  with home security monitoring devices as required by the Contract.  During the installation, it was
22  represented that the Security System had been properly installed.

23       16.   On a separate occasion, in or around December of 2022, Defendant ADT had a technician
24  come to the Property to reinstall the camera system and make sure it was functioning properly.
25  Although the technician had ample opportunity to demonstrate how to properly use the camera system
26  and the live feed feature on the ADT application, the technician neglected to do so.

27       17.   After installation of the Security System on the Property, Plaintiff began paying as
28  required per the Contract.

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 · Fax (949) 756-9060

COMPLAINT

-4-

1      18.    On or about February 16, 2022, Plaintiff and his family left for a weekend in Palm

2   Desert, California.  Prior to leaving the Property, Plaintiff locked all of the doors and set the alarm

3   system at the Property as Defendant ADT instructed.

4      19.    On or about February 20, 2023, Plaintiff and his family returned to the Property and

5   discovered that a break-in had occurred ("Burglary").  Based on a review of the security footage from

6   the cameras installed by Defendant ADT, and his assessment of the damage to the Property, Plaintiff

7   determined that on or about February 18, 2023, at 6:00 p.m., two men entered the Property by breaking a

8   glass panel in the master bedroom door leading to the exterior of the Property.  Plaintiff during the time

9   he was away from his home, did not receive any notification from the Security System or Defendant

10  ADT, that the Burglary had occurred.

11     20.    Despite the guarantees made by Defendant ADT through its sales representatives as to

12  the performance of the Security System, Plaintiff discovered that the Glass Break Sensors installed on

13  the glass door in the master bedroom did not activate when the glass was broken during the Burglary.

14     21.    The burglars, who were able to gain access to the Property undetected by the Security

15  System, caused damage to the Property and stole Plaintiff and his family's possessions ("Personal

16  Items").  Attached as Exhibit "2" is a list of all the Personal Items that were stolen, and the damage

17  incurred to the Property.

18     22.    After the Burglary Plaintiff contacted Defendant ADT, specifically Mr. Ryan Montanez,

19  and explained what happened.  On or about February 21, 2023, Mr. Montanez met Plaintiff at the

20  Property to inspect the damage and to see if he could determine as to why the Security System did not

21  alert.  Upon his inspection, Mr. Montanez informed Plaintiff that Defendant ADT improperly installed

22  regular door sensors and not the promised Glass Break Sensors on the master bedroom glass door which

23  allowed the burglars to gain access to the Property undetected.  Mr. Montanez expressed his opinion to

24  Plaintiff that had the proper Glass Break Sensors been installed, the Security System would have been

25  activated as intended and represented.  Mr. Montanez also determined that Defendant ADT had

26  improperly installed the Glass Break Sensors on the wooden garage door, as opposed to the glass doors.

27     23.    Plaintiff was informed by Mr. Montanez that he would contact Defendant ADT's upper

28  management because it was an obvious mistake on part of Defendant ADT and that the Burglary and

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

1  corresponding loss would be covered by Defendant ADT's Theft Protection coverage.

2    24.    After not hearing from Defendant ADT to resolve this issue, Plaintiff, by way of counsel,

3  reached out to Ms. Danielle Williams, Custom Home District Manage for Defendant ADT, regarding

4  claims against Defendant ADT arising out of the burglary. Ms. Williams directed Plaintiff's counsel to

5  contact Defendant ADT's legal department, however provided incorrect contact information. Despite

6  multiple follow-ups and inquiries, Ms. Williams ignored future communications from Plaintiff's

7  counsel.

8    25.    On or about May 26, 2023, Plaintiff's counsel sent notice to Defendant ADT as required

9  by *Cal. Civ. Code* § 1782(a), alerting it to the claims Plaintiff had arising from its improper installation

10  of the Security System.

11    26.    To date, Defendant ADT has failed to contact Plaintiff, or respond to Plaintiff's

12  communications, regarding the fact that a faulty security system was improperly installed, that Plaintiff

13  paid for.

14    27.    Had Plaintiff known that the Security System and Glass Break Sensors would not

15  conform with representations made by Defendant ADT, he would not have purchased the Security

16  System. Indeed, Plaintiff paid for a much more expensive and reputable product and service than the one

17  he received. As a result of Defendant ADT's wrongful conduct, Plaintiff has been damaged in an

18  amount to be proven at the time of trial, but in no event less than $149,401.46. This amount does not

19  include prejudgment interest, costs, or attorneys' fees.

20

21    **FIRST CAUSE OF ACTION**

22    **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, *CAL. CIV. CODE* § 1750 *et seq.***

23    (By Plaintiff against all Defendants)

24    28.    Plaintiff incorporates by reference Paragraphs 1 through 27 of this Complaint, as though

25  fully set forth herein.

26    29.    The Security System is a "good" as defined by *Cal. Civ. Code* § 1761(a).

27    30.    Defendant ADT and each Doe defendant is a "person" as defined by *Cal. Civ. Code* §

28  1761(c).

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

1      31.     Plaintiff is a "consumer" as defined by *Cal. Civ. Code* § 1761(d).

2      32.     The sale of the Security System is a "transaction" as defined by *Cal. Civ. Code* § 1761

3 (e).

4      33.     Under California's Consumers Legal Remedies Act ("CLRA") (*Cal. Civ. Code* § 1770),

5 the following methods of unfair competition and unfair or deceptive acts or practices are unlawful: (2)

6 misrepresenting the approval or certification of goods; (5) representing that goods are fit for ordinary

7 use; (5) representing that goods have characteristics which they do not have; (7) representing those

8 goods are of a particular standard or quality, if they are of another; (9) advertising goods or services with

9 intent not to sell them as advertised; (14) representing that a transaction confers or involves rights,

10 remedies, or obligations that it does not have or involve, or that are prohibited by law; and (16)

11 representing that the subject of the transaction has been supplied in accordance with the previous

12 representation when it has not.

13      34.     Upon normal use, the Glass Break Sensors, which Defendant ADT represented as able to

14 detect if someone gained entry by breaking the glass door, did not perform as promised.  Since the Glass

15 Break Sensors did not trigger, the Security System did not alert Plaintiff and Defendant ADT to the

16 Burglary.

17      35.     Given the failure of the Glass Break Sensors and/or the failure to install them as

18 represented, the burglars were able to gain entry into Plaintiff's Property undetected, cause $1,150.00

19 worth of damage to the Property, and leave with Plaintiff's Personal Items valued at $146,227.00.

20      36.     Defendant ADT has violated the CLRA by misrepresenting that the Security System and

21 Glass Break Sensors were properly installed and would alert Plaintiff to a break in, should one take

22 place.

23      37.     The Security System, which was not properly installed, failed to perform as expected.

24      38.     In accordance with *Cal. Civ. Code* § 1782(a), on May 26, 2023, Plaintiff's counsel served

25 Defendant ADT with notice of its CLRA violations by certified mail, return receipt requested.

26 Defendant ADT failed to provide an appropriate relief for its CLRA violations within 30 days of

27 Plaintiff's notification letter. Thus, Plaintiff seeks compensatory and exemplary damages as permitted

28 by *Cal. Civ. Code* §§ 1780 and 1782(b).

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

39.     Plaintiff seeks damages, restitution, and all other relief as the court deems appropriate pursuant to *Cal. Civ. Code* § 1780(a).

40.     As a direct and proximate result of Defendant ADT's conduct, Plaintiff has suffered damages in an amount that will be proven at the time of trial, but in no event less than the amount of $149,401.46, which is the current value of the payments, related expenses, fees and costs paid/incurred by Plaintiff for the purchase of the Security System in the amount of $2,024.46, and damages incurred as a result of the Burglary in the amount of $147,377.00.  This amount does not include pre-judgment interest, attorneys' fees, or costs.

## SECOND CAUSE OF ACTION

## VIOLATION OF *CAL. BUS. & PROF. CODE* § 17200

### (By Plaintiff against all Defendants)

41.     Plaintiff incorporates by reference Paragraphs 1 through 40 of this Complaint, as though fully set forth herein.

42.     *Cal. Bus. & Prof. Code* § 17200 ("UCL"), prohibits acts of unfair competition, which shall mean and include any "unlawful business act or practice."

43.     Defendant ADT violated the UCL by misrepresenting the quality and performance of the Security System with which the Security System was allegedly manufactured and installed.

44.     Defendant ADT, through its sales representative, explained to Plaintiff how the Security System and Glass Break Sensors would operate and protect his home.  The Security System that was installed by Defendant ADT at Plaintiff's Property did not conform with the representations made by Defendant ADT prior to and at the time the Security System was installed.

45.     Defendant ADT knew, or should have known, that the Security System and Glass Break Sensors were not properly installed.

46.     The above actions of Defendant ADT constitute unfair business methods and practices in the state of California.  The unfair business practices committed by Defendant ADT were committed with the intent, design, and purpose, to induce Plaintiff into purchasing the Security System under false pretenses.

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 · Fax (949) 756-9060

47.    In engaging in the conduct alleged above, Defendant ADT engaged in unfair business practices under the UCL. Specifically, Defendant ADT violated the "unlawful" prong of the UCL, including making material misrepresentations and omissions in violation of *Cal. Bus. & Prof. Code* § 17200 *et seq.* and *Cal. Civ. Code* § 1750, *et seq.*; and engaging in deceit in violation of *Cal. Bus. & Prof. Code* § 1709-1710.

48.    As a direct and proximate result of Defendant ADT's conduct, Plaintiff has suffered damages in an amount that will be proven at the time of trial, but in no event less than the amount of $147,860.80, which is the current value of the Personal Items lost as a result of the Burglary, damage incurred to the Property, and related expenses, fees and costs paid/incurred by Plaintiff for the purchase of the Security System. This amount does not include pre-judgment interest, attorneys' fees, or costs, which are recoverable pursuant to *Cal. Code Civ. Proc.*, § 1021.5.

49.    Defendant ADT and each of its actions in engaging in wrongful conduct as alleged herein were willful, wanton, malicious and oppressive, and done with the intent to deceive. Defendant ADT's acts as noted herein did not occur as a result of a mere oversight, innocent lapse of judgment, or basic negligence. Defendant ADT's conduct was intentional and with willful knowledge of the consequences. Defendant ADT demonstrated its reckless disregard for the injury and damages that its conduct would have, and has, caused. Defendant ADT demonstrated complete disrespect for the harm caused to Plaintiff. The fact that Defendant ADT had the knowledge and recklessly disregarded Plaintiff's rights entitles Plaintiff to punitive and exemplary damages in an amount to be proven at the time of trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(By Plaintiff against all Defendants)

50.    Plaintiff incorporates by reference Paragraphs 1 through 49 in this Cause of Action, as though fully set forth herein.

51.    The Security System is a "consumer good" as defined by *Cal. Civ. Code* § 1791(a).

52.    Plaintiff is a "retail buyer" as defined by *Cal. Civ. Code* § 1791(b).

53.     Defendant ADT is a "retail seller" as defined by *Cal. Civ. Code* § 1791(l).

54.     Defendant ADT is a "manufacturer" as defined by *Cal. Civ. Code* §1791(j).

55.     The Security System, particularly the Glass Break Sensors that were improperly installed, is subject to the Song-Beverly Warranty Act ("SBA").

56.     Per *Cal. Civ. Code* Section 1792, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."

57.     The implied warranty of merchantability requires that the Security System "[p]ass without objection in the trade under the contract description" and "[a]re fit for the ordinary purposes for which such goods are used." (*Cal. Civ. Code* § 1791.1(a)(1) & (2).)

58.     Plaintiff has been harmed by the Security System manufactured, installed, and sold by Defendant ADT. Specifically, the Security System was sold with the promise that it would be properly installed, and the Glass Break Sensors placed on the doors and windows of the home would alert Plaintiff to a break in, should anyone try to gain access by breaking a glass window and/or door. However, soon after his purchase of the Security System, Plaintiff discovered that the Security System and Glass Break Sensors were not working and/or properly installed. This was discovered when two men were able to break into the Property by smashing a glass door, in Plaintiff's master bedroom. Although the Glass Break Sensors were supposedly correctly installed, the Security System was not triggered and the men were able to steal Plaintiff and his family's Personal Items. Immediately after the incident occurred, Plaintiff alerted Mr. Montanez to the incident, which he investigated. Accordingly, it became apparent to Plaintiff that the Security System they purchased was not operational. Hence, the Security System sold by Defendant ADT is not of the quality of security system that a buyer purchasing home security system would expect to receive.

59.     At the time Plaintiff purchased the Security System from Defendant ADT, Defendant ADT was in the business of selling these goods as a manufacturer, installer, and distributor of these products and as a company that holds itself out as having good quality security devices and the ability to provide effective and state of the art security. (*Cal. Civ. Code* § 1791.1(b).)

1     60.     The Security System manufactured, installed, and sold by Defendant ADT is not of the

2 same quality as those generally acceptable in this trade. As such, the Security System is not fit for the

3 ordinary purposes for which the Security System was intended, as it did not alert Defendant ADT or

4 Plaintiff to the Burglary. (*Cal. Civ. Code* § 1791.1(a)(1) & (2).)

5     61.     Plaintiff has attempted to mitigate his damages by alerting Defendant ADT to the issue of

6 the Security System. Additionally, Plaintiff has taken reasonable steps to notify Defendant ADT of

7 these defects and has provided Defendant ADT with reasonable time to remedy this situation.

8     62.     As a direct and proximate result of the defective Security System manufactured and sold

9 by Defendant ADT, Plaintiff has incurred substantial costs in his purchase of the defective Security

10 System. (*Cal. Civ. Code* § 1794.)

11     63.     The defective Security System manufactured, installed, and sold by Defendant ADT is

12 not of the quality expected of Security Systems. As such, the defective Security System is a substantial

13 factor in causing Plaintiff's harm. Accordingly, Plaintiff is entitled to a civil penalty of two times

14 Plaintiff's actual damages pursuant to *Cal. Civ. Code* § 1794(c). Plaintiff also seeks recovery of his

15 attorneys' fees and costs incurred in prosecuting this action per *Cal. Civ. Code* § 1794(d).

16

17 **FOURTH CAUSE OF ACTION**

18 **VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

19 **BREACH OF THE EXPRESS WARRANTY**

20 (By Plaintiff against all Defendants)

21     64.     Plaintiff incorporates by reference Paragraphs 1 through 63 in this Cause of Action, as

22 though fully set forth herein.

23     65.     The Security System is a "consumer good" as defined by *Cal. Civ. Code* § 1791(a).

24     66.     Plaintiff is a "retail buyer" as defined by *Cal. Civ. Code* § 1791(b).

25     67.     Defendant ADT is a "retail seller" as defined by *Cal. Civ. Code* § 1791(l).

26     68.     Defendant ADT is a "manufacturer" as defined by *Cal. Civ. Code* §1791(j).

27     69.     The Security System, particularly the Glass Break Sensors that were improperly installed,

28 is subject to the Song-Beverly Warranty Act.

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 755-9050 · Fax (949) 756-9060

70.     Plaintiff has been harmed by Defendant ADT by virtue of its sale and installation of the Security System manufactured and sold by Defendant ADT because it advertised and represented by its statements to Plaintiff, that the Security System sold to Plaintiff would be able to alert Plaintiff to a break in and properly secure the Property.  However, Plaintiff believes that either the Security System was defective, or the Security System was improperly installed.

71.     Plaintiff is informed, believes, and based thereon alleges that Defendant ADT did not install the functioning home security system that he had paid for.

72.     The Security System manufactured, installed, and sold by Defendant ADT is not of the same quality as those generally acceptable.

73.     Plaintiff has taken reasonable steps to notify Defendant ADT of these defects and has provided Defendant ADT with reasonable time to remedy this situation.

74.     Defendant ADT has failed to remedy the defects or promptly make restitution as required by *Cal. Civ. Code* §1793.2(d)(1).

75.     As a direct and proximate result of the defective Security System manufactured, installed, and sold by Defendant ADT, Plaintiff has incurred damages and costs in the amount of $149,401.46. (*Cal. Civ. Code* § 1794.)

76.     The Security System manufactured, installed, and sold by Defendant ADT is not of the quality it advertised it to be or is expected of a Security System with state-of-the-art technology.  As such, Defendant ADT's conduct is a substantial factor in causing Plaintiff's financial harm. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to *Cal. Civ. Code* § 1794(c).  Plaintiff also seeks recovery of his attorneys' fees and costs incurred in prosecuting this action per *Cal. Civ. Code* § 1794(d).

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (By Plaintiff against all Defendants)

77.     Plaintiff incorporates by reference Paragraphs 1 through 76 in this Cause of Action, as though fully set forth therein.

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 · Fax (949) 756-9060

78.     In or around December of 2022, Defendant ADT, by and through its sales representative, intentionally misrepresented to Plaintiff that the Security System sold with Glass Break Sensors and motions sensors would be installed correctly and would be able to alert Plaintiff to a possible break in. Specifically, Defendant ADT failed to inform Plaintiff that the Security System was not properly installed and or malfunctioned.

79.     At the time Defendant ADT made the aforementioned misrepresentations noted herein, Defendant ADT had no reasonable basis to believe the misrepresentations and the true fact was that Defendant ADT intended to make it appear that the Security System, Plaintiff purchased, would be able to provide and properly install a highly rated security system, so as to induce Plaintiff to purchase the Security System from Defendant ADT.

80.     At the time Defendant ADT made these false statements of fact to Plaintiff as stated above, and/or failing to correct such misstatements of fact, Defendant ADT had no reason to believe the veracity of its representations to Plaintiff. Moreover, when Defendant ADT negligently suppressed such material facts, it knew of the importance of these facts, knew that Plaintiff would be relying on its conduct, and intended that Plaintiff rely on its conduct and representations. Had Plaintiff been made aware that Defendant ADT's Security System would not be probably equipped to notify Plaintiff of a break in, Plaintiff would not have purchased the Security System from Defendant ADT. Plaintiff relied on Defendant ADT to be truthful and not make any misstatement of fact. This reliance was justified as Defendant ADT represented itself to be a specialty realtor of security systems.

81.     As a direct and proximate result of Defendant ADT's negligent misrepresentation of fact, Plaintiff was harmed and continues to suffer damages in such a manner and amount as will be proven at the time of the trial but in no event less than $149,401.46. This includes $2,024.46 for the defective Security System purchased from Defendant ADT, that Plaintiff currently has in his possession, and $147,377.00 for the Personal Items and damage to the Property, that Plaintiff incurred as a result of the failure of the Security System. Defendant ADT's act of misrepresentation did not occur as a result of a mere oversight, innocent lapse of judgment, or basic negligence. Its conduct was intentional and with willful knowledge of the consequences. Defendant ADT demonstrated its reckless disregard for the injury and damage that its conduct would have, and has, caused to Plaintiff. The fact that Defendant

1  ADT recklessly disregarded Plaintiff's rights entitles Plaintiff to damages in an amount to be determined
2  at the time of trial, but in no event less than $149,401.46.  This includes damages for having to remedy
3  Defendant ADT's wrongful conduct, which includes costs for having to replace the defective Security
4  System and items lost as a result.

5

6  ## SIXTH CAUSE OF ACTION

7  ## BREACH OF CONTRACT

8  (By Plaintiff against all Defendants)

9  82.    Plaintiff incorporates by reference Paragraphs 1 through 81 in this Cause of Action, as
10  though fully set forth therein.

11  83.    On or about November 28, 2022, Plaintiff entered into an agreement with Defendant
12  ADT for the purchase of the Security System.  As a part of the agreement, Plaintiff agreed to pay an
13  installation fee of $323.18 and monthly payments of $53.55 to Defendant ADT.  In exchange, Defendant
14  ADT agreed to deliver and properly install the Security System. (Exhibit "2.")

15  84.    Shortly after his purchase of the Security System, Plaintiff became aware, by way of the
16  Burglary, that the Security System was either defective or was not properly installed.  Indeed, the Glass
17  Break Sensors appeared to not have been installed on the correct doors and windows as agreed to by
18  Plaintiff and Defendant ADT.

19  85.    Defendant ADT breached the agreement by failing to provide Plaintiff with a properly
20  installed and functioning Security System.  Plaintiff is informed, believes, and based thereon alleges that
21  Defendant ADT improperly installed the Security System.

22  86.    Plaintiff, on the other hand, has performed all of his obligations required per the
23  agreement by paying the initial installation fee and monthly payments owed to Defendant ADT for the
24  purchase of the Security System.

25  87.    As a direct and proximate result of Defendant ADT's breach of the agreement, Plaintiff
26  has suffered damages in an amount that will be proven at trial, but in no event less than the total amount
27  of $149,401.46.  This is the sum of the amount paid for the Security System and the amount of damages
28  incurred by Plaintiff as a result of the break in that could have been prevented had the Security System

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 · Fax (949) 756-9060

1    been properly installed.  This amount does not include attorneys' fees or costs, which were incurred as a

2    result of Defendant ADT's breach.

3

4                              **SEVENTH CAUSE OF ACTION**

5                                   **NEGLIGENCE**

6                              (By Plaintiff against all Defendants)

7        88.      Plaintiff incorporates by reference Paragraphs 1 through 87 in this Cause of Action, as

8    though fully set forth therein.

9        89.      The damage to the Property and Plaintiff's possessions was a direct and legal result of the

10   negligence, carelessness, and reckless acts and/or omissions of Defendant ADT.

11       90.      Defendant ADT owed Plaintiff a duty to exercise reasonable care in the installation of the

12   Security System.

13       91.      Defendant ADT breached its duty to exercise reasonable care and acted negligently and

14   recklessly by failing to properly install the Security System.

15       92.      Defendant ADT acted knowingly and with conscious disregard for the installation of the

16   Security System on the Property.

17       93.      Defendant ADT's acts and omissions with installing the Security System, which was

18   under Defendant ADT's exclusive control, contributed to the ability of the burglars to break into the

19   Property.

20       94.      The failure of the Security System to be activated when the break in occurred at the

21   Property and resulting damaged suffered by Plaintiff is of a kind that does not normally occur unless

22   someone was negligent.

23       95.      The damage suffered by Plaintiff was not due to any voluntary action or contributory

24   fault of Plaintiff.

25       96.      As a direct and proximate result of the above acts and omissions by Defendant ADT,

26   Plaintiff has suffered damages in an amount to be proven at trial, but no less than $147,377.00 for the

27   Personal Items stolen and damage caused to the Property.  These amounts do not include interest, costs,

28   or attorneys' fees.

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

**EIGHTH CAUSE OF ACTION**

**NEGLIGENCE – RECALL/RETROFIT**

(By Plaintiff against all Defendants)

97.    Plaintiff incorporates by reference Paragraphs 1 through 96 in this Cause of Action, as though fully set forth therein.

98.    Defendant ADT designed, manufactured, distributed, sold, marketed, supplied, installed, and inspected the Security System and/or its associated components, or performed an act which brought the Security System and/or its associated components to market.

99.    Defendant ADT knew or should have known that the Security System and/or its associated components were dangerous or likely to be dangerous when used in a reasonably foreseeable manner, given the tendency that when not properly installed, the Security System would not activate and alert a customer to a possible break in.

100.    Defendant ADT became aware, on or about February 21, 2023, of the defect, danger, and tendency of the Security System when it did not alert Plaintiff to the break in that occurred at his Property on February 18, 2023.

101.    Defendant ADT failed to recall, retrofit, and/or warn of the defect, danger, and tendency of the Security System to fail under normal, usual, and foreseeable use after Plaintiff informed it of the same.

102.    A reasonable designer, manufacturer, distributor, seller, marketer, supplier, installer, and inspector under the same or similar circumstances would have recalled and/or retrofitted the Security System and/or its associated components.

103.    As a direct and proximate result of Defendant ADT's aforementioned failure to recall, retrofit, and/or warn, the break in occurred at the Property and resulted in damaged suffered by Plaintiff.

104.    As a direct and proximate result of the above acts and omissions by Defendant ADT, Plaintiff has suffered damages in an amount to be proven at trial, but no less than $147,377.00 for the Personal Items stolen and damage caused to the Property. These amounts do not include interest, costs, or attorneys' fees.

## **PRAYER**

WHEREFORE: Plaintiff prays for judgment, as follows:

 I.  For general damages to be determined at time of trial, but no less than $149,401.46;

 II.  For special damages according to proof at time of trial;

 III.  For prejudgment and post-judgment interest according to proof;

 IV.  For compensatory and consequential damages according to proof at time of trial;

 V.  For civil penalties as authorized by law and according to proof at time of trial;

 VI.  For punitive damages in an amount appropriate to punish Defendants, and each of them, and deter others from engaging in similar misconduct;

 VII.  For an injunction requiring Defendant ADT to conduct a recall campaign to notify all potentially impacted customer regarding defective installation of security systems;

 VIII.  For attorneys' fees as provided for by law;

 IX.  For costs of suit incurred; and

 X.  For such other and further relief as this Court deems just and proper.

Respectfully submitted on this 15th day of September, 2023, by:

             MADISON LAW, APC

             Alexis A. Jugan,
             Attorney for Plaintiff
             Jeriess Boulus

MADISON LAW, APC
17702 Mitchell North, Irvine, CA 92614
Tel (949) 756-9050 - Fax (949) 756-9060

# EXHIBIT "1"

DocuSign Envelope ID: 56AEAE8E-59AB-4E01-B6C4-57A6B5B86CF1



## RESIDENTIAL SERVICES CONTRACT (CA)

### Section 1. Customer Info

**ADT LLC**
**dba ADT Security Services ("ADT")**
**Office Address**
www.MyADT.com
800.ADT.ASAP
(800.238.2727)

Customer Name
("Customer" or "I" or "me" or "my")   __Jeriess Boulus__

Premises'
Address __7021 E Hidden Oaks Ln__

City __Orange__          State __CA__   ZIP __92867__

Tax Exempt No.          Tax Expire Date

Protected
Premises'Telephone __714-883-8228__

**IF FAMILIARIZATION PERIOD IS REJECTED INITIAL HERE ____**   (see Paragraph 15 of the Important Terms and Conditions for explanation)

EMAIL __jboulus@yahoo.com__

I agree that ADT may confirm my system is monitored by ADT and share my system usage data (excluding audio and video) with participating ADT partners.          X   Yes          No

If I have provided or do provide ADT with a phone number, including but not limited to a cell phone number, a number that I later convert to a cell phone number, or any number that I subsequently provide for billing and other non-solicitation purposes, I agree that ADT may contact me at this/these number(s). I also agree to receive calls and messages such as pre-recorded messages, calls and text messages from automated dialing systems at the number(s) provided. I confirm that I am the registered owner of all telephone number(s) that I have or will provide to ADT to contact me. If I have provided or do provide ADT with an email address, I agree that ADT may send me emails regarding my ADT Services or new ADT or third-party products and services. I may unsubscribe or opt out by emailing DNCcomplaint@adt.com or by calling (877) 377-7343.

EQUIPMENT TO REMAIN PROPERTY OF ADT AND PAYMENT OBLIGATION. All equipment installed by ADT pursuant to this Contract shall be owned by ADT except as otherwise agreed in writing. ADT has the right upon termination of this Contract to remove or disable any or all of the equipment owned by ADT, in which case I will not be able to use the equipment for any purpose. See Paragraph 8 of the Important Terms and Conditions for more information. I agree to pay the equipment installation costs described in Section 2. I UNDERSTAND THAT FINANCING MAY BE AVAILABLE FOR THE INSTALLATION COST AND AGREE THAT(A) I MAY NOT BE APPROVED FOR ANY FINANCING FOR INSTALLATION COSTS AND (B) I WILL NOT BE NOTIFIED OF WHETHER FINANCING HAS BEEN APPROVED UNTIL THE DATE THE EQUIPMENT IS INSTALLED. UNLESS I AM LATER APPROVED FOR FINANCING FROM ADT, I WILL BE REQUIRED TO PAY THE FULL AMOUNT OF THE TOTAL INSTALLATION COST IN A SINGLE INSTALLMENT ON THE DATE THE EQUIPMENT IS INSTALLED. I acknowledge that the repayment term for installation costs may be different from the initial term for ADT services.

I acknowledge and agree to each of the following:  (A) This Contract consists of ten (10) pages. Before signing this Contract, I have read, understand and agree to each and every term of this Contract, including but not limited to Paragraphs 1, 3, 5, 7 and 19 of the Terms and Conditions.  (B) The initial term of this Contract for ADT services is  two (2) years  and renews month to month thereafter. (C) ADT is not a security consultant and cannot address all of my potential security needs. ADT has explained to me the full range of equipment and services that ADT can provide me. Additional equipment and services over those identified in this Contract are available and may be obtained from ADT at an additional cost to me. I have selected only the equipment and services identified in this Contract. (D) No alarm system can provide complete protection or guarantee prevention of loss or injury. Fires, floods, burglaries, robberies, medical problems and other incidents are unpredictable and cannot always be detected or prevented by an alarm system. Human error is always possible, and the response time of police, fire and medical emergency personnel is outside the control of ADT. ADT may not receive alarm signals if communications or power is interrupted for any reason. (E) ADT recommends that I manually test the alarm system monthly and any time I change telephone service, by calling 800.ADT.ASAP or by logging in to www.MyADT.com. (F) This Contract requires final approval by an ADT authorized manager before ADT may provide any equipment or services, and if approval is denied, then this Contract will be terminated, and ADT's only obligation will be to notify me of such termination and refund any amounts I paid in advance.

I understand and agree that I am required to be present at the installation of the equipment installed under this Contract and to sign the additional contract documents necessary to complete any financing arrangements. If I am not present at the installation of the equipment, I authorize any adult 18 years of age or older who has access to my premises and is present at the installation to authorize the completion of the installation of any equipment and to make any changes to the choice of equipment installed or services purchased. I authorize payment for any changes approved at the installation pursuant to the payment instructions at the end of "Section 2. Services to be Provided" on page 2 of this Contract.

ADT Representative

__Ryan Montanez__
┌ DocuSigned by:
Customer Approval: Original Signature Required (Must match Customer Name in Section 1 above)

X ___4F4DEDA286DF4C8...___

Rep. License No.
(If Required)

Rep.
ID No. __199075__

__11/28/2022__

### NOTICE OF CANCELLATION

I, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION  OR WITHIN FIVE BUSINESS DAYS IF I AM A SENIOR CITIZEN. IF THIS TRANSACTION INVOLVED THE SALE OF A PERSONAL EMERGENCY RESPONSE UNIT, I HAVE 7 BUSINESS DAYS.  SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT. I ACKNOWLEDGE BEING VERBALLY INFORMED OF MY RIGHT TO CANCEL AT THE TIME OF EXECUTION OF THIS CONTRACT AND RECEIPT OF THIS NOTICE.

©2020 ADT.
All rights reserved. (EA300UE05 11/21)

DocuSign Envelope ID: 56AEAE8E-59AB-4E01-B6C4-57A6B5B86CF1



## RESIDENTIAL SERVICES CONTRACT (CA)

### Section 2. Services to be Provided

**FINANCIAL DISCLOSURE STATEMENT**
**THERE IS NO FINANCE CHARGE OR COST OF CREDIT (0% APR) ASSOCIATED WITH THIS CONTRACT.**

| A. NUMBER OF PAYMENTS FOR SERVICES FOR THE INITIAL TERM IS <u>24</u> . | B. AMOUNT OF EACH PAYMENT FOR SERVICES IS <u>$53.55</u> (TOTAL MONTHLY SERVICE CHARGE FROM BELOW) | TOTAL OF PAYMENTS FOR SERVICES FOR THE INITIAL TERM IS <u>$1,285.20</u> (A. TIMES B.) (EXCLUSIVE OF INSTALLATION AND UP FRONT CHARGES AND ANY APPLICABLE TAXES, FEES, FINES AND RATE INCREASES). ADDITIONAL SERVICE CHARGE DISCOUNTS MAY APPLY, SEE NOTES BELOW. |
|---|---|---|
| LATE CHARGE – PAYMENT IS DUE PURSUANT TO MY SELECTED BILLING FREQUENCY, PRIOR TO THE START OF SERVICE. MY FIRST BILL/CHARGE WILL BE SENT/MADE SHORTLY AFTER MY SERVICE BEGINS. ADT MAY IMPOSE A ONE-TIME LATE CHARGE ON EACH PAYMENT THAT IS MORE THAN TEN (10) DAYS PAST DUE, UP TO THE MAXIMUM AMOUNT PERMITTED BY LAW, BUT IN NO EVENT WILL THIS AMOUNT EXCEED $5.00. | PREPAYMENT – IF I PREPAY THE TOTAL OF PAYMENTS PRIOR TO THE END OF THE INITIAL TERM OF THIS CONTRACT, THERE IS NO PENALTY OR REFUND. | SEE PARAGRAPHS 1, 2, 4, 16 AND 20 OF THIS CONTRACT FOR ADDITIONAL INFORMATION ABOUT RENEWAL TERMS, NONPAYMENT, DEFAULT AND ACCELERATION. |

| | Monthly Service Charge | | | |
|---|---|---|---|---|
| Standard Monthly Service, Burglary<br>Service includes: Customer Monitoring Center Signal Receiving and Notification Service for Burglary, Manual Fire and Manual Police Emergency | | Customer to obtain and pay for alarm permit. Failure to obtain and provide ADT with required alarm permit registration could result in no fire/police response to an alarm from the premises and/or a fine. | | N |
| Standard Monthly Service, Fire/Smoke Detection<br>Service includes: Customer Monitoring Center Signal Receiving and Notification Service for Fire, Manual Fire and Manual Police Emergency | | One Time Alarm System Registration Fee | | |
| | | Municipal Electrical/Installation Permit | | |
| | | Admin Fee | | |
| Carbon Monoxide / Low Temp / Flood Service | | Installation Cost | | $310.00 |
| Medical Alert | | Taxable Amount | | |
| Safewatch Cellguard® | | Non-Taxable Amount | | |
| SecurityLink Two-Way Voice | | Connection/Activation Fee | | $0.00 |
| Extended Limited Warranty/Quality Service Plan (QSP) | | Sales Tax on Installation* | | $13.18 |
| Guard Response Service | | Total Installation Cost | | $323.18 |
| Monthly Recurring Municipal Alarm Permit Fee | | Trip Charge Received | | |
| Other _____ | | Installation Down Payment Received | | |
| | | Amount Due at Installation* | | $107.73 |
| **Total Monthly Service Charge** | $53.55 | Balance Due at Installation* | | $215.46 |
| | | Security Deposit (see paragraph 1.B of the Terms and Conditions) | | |

*Amounts shown above for Taxable Amount, Sales Tax on Installation, Amount Due at Installation and Balance Due are estimates; final amounts will be calculated and detailed on your bill.

By signing this Contract, I authorize ADT, and any successors and assigns thereto, to withdraw from my bank account and/or charge my credit/debit card provided to ADT through an Automated Clearing House ("ACH") for (i) Service Charges and Installation Cost as indicated below, (ii) Contract Termination Charges (see Paragraph 2, Early Termination of this Contract) and (iii) all other charges and amounts for which I am liable under this Contract.

( X ) Service Charges (if no billing period oval is filled, my recurring service charges will be charged monthly)

    ( ) Annually        ( ) Semi-Annually        ( ) Quarterly        ( X ) Monthly

( X ) Installation Charges

    ( X ) 3 monthly credit/debit card payments of equal amounts (available for telephone orders or fields sales with an Installation Cost greater than or equal to $200)

This authorization to withdraw from my bank account and/or charge my credit/debit card will remain in effect until the termination date of this Contract or until I cancel this Contract, whichever occurs first. I may revoke this authorization by notifying ADT and my bank or credit card company at least 10 business days before the scheduled debit or charge. I agree to notify ADT of any other changes in my account information at least 15 days prior to the next billing date. If the date or amount of the withdrawal changes, or if Contract Termination Charges or other charges (other than regular recurring charges) apply, ADT will notify me at least 15 days prior to the payment being collected. If a payment date falls on a weekend or holiday, payment may be executed on the next business day. Charges may be applied to my account each month as early as the transaction date. If an ACH transaction is rejected for non-sufficient funds (NSF), ADT may attempt to process the charge again within 30 days, and an NSF charge may apply. The origination of ACH transactions to my account must comply with the provisions of U.S. law. I am an authorized user of the bank account or credit card account provided to ADT for payment of charges under this Contract, and I will not dispute payments under this Contract from this account with my credit card company or bank so long as the amount corresponds to the terms of this Contract.

©2020 ADT.<br>All rights reserved. (EA300UE05 11/21)

DocuSign Envelope ID: 56AEAE8E-59AB-4E01-B6C4-57A6B5B86CF1

 ## RESIDENTIAL SERVICES CONTRACT (CA)

**NOTES**
Job Notes: Dauhua NVR and 10 2mp IP dome

©2020 ADT.
All rights reserved. (EA300UE05 11/21)

## IMPORTANT TERMS AND CONDITIONS

**1. A. PAYMENTS; TERM; CONSUMER REPORT.** In addition to the Installation Cost, I agree to purchase the ADT services and pay all Service Charges described in this Contract. Service Charges are for ADT services purchased by me, including my license to use all ADT-owned equipment installed in my premises. Use of the ADT-owned equipment may be taxable. All charges are payable in advance. The initial term of this Contract for ADT services is two (2) years. ADT's alarm monitoring and notification services will begin when the equipment is installed, operational and communicating with ADT's Customer Monitoring Center ("CMC"). This Contract will automatically renew for successive thirty (30)-day terms unless terminated by either party at least thirty (30) days before the end of the current term. If terminated, this Contract ends on the last day of the then-current term. I may terminate my service by calling ADT at 800.238.2727 (1-800-ADT-ASAP). I authorize ADT to obtain a non-investigative consumer report, commonly referred to as a credit check or credit report, about me from a consumer reporting agency at any time during the term.

**B. SECURITY DEPOSIT.** ADT may require me to pay a refundable security deposit (i) before installation of the equipment and commencement of services or (ii) at any time to continue services if I fail to pay any amounts when they are due. If my ADT services are terminated or ADT is otherwise required by law to refund my security deposit, ADT shall within forty-five (45) days or as otherwise specified by applicable law return my security deposit (without interest) minus any amounts owed by me to ADT under this Contract (including without limitation, Contract Termination Charges, false alarm fines or unpaid Service or Installation Charges). ADT may, in its discretion, return all or a portion of my security deposit to me prior to termination of my ADT service (without interest).

**2. EARLY TERMINATION OF THIS CONTRACT. I AGREE THAT THE CHARGES DUE UNDER THIS CONTRACT ARE BASED ON MY AGREEMENT TO RECEIVE AND PAY FOR THE SERVICES FOR TWO (2) FULL YEARS AND THAT ADT HAS RELIED UPON MY AGREEMENT AND HAS INCURRED COSTS IN DECIDING TO ENTER INTO THIS CONTRACT. IF I CANCEL SERVICE OR OTHERWISE TERMINATE THIS CONTRACT DURING ITS INITIAL TERM, OR IF ADT CANCELS THIS CONTRACT DURING ITS INITIAL TERM FOR A REASON SET FORTH IN PARAGRAPH 20(B) BELOW, I WILL PAY ADT 75% OF THE TOTAL REMAINING MONTHLY CHARGES AS AN ALTERNATIVE TO ME HAVING TO PAY THE FULL REMAINING CHARGES. THIS AMOUNT IS A CONTRACT TERMINATION CHARGE AND IS NOT A PENALTY. THE AMOUNT IS PAYABLE IMMEDIATELY IN FULL. NO CONTRACT TERMINATION CHARGES ARE DUE IF I TERMINATE, OR IF ADT CANCELS, DURING THE THIRTY (30)-DAY RENEWAL PERIOD(S).**

**3. INCREASES IN CHARGES.** ADT has the right to increase the service charge at any time after the initial two (2)-year term. If I object in writing to the increase within thirty (30) days of receiving notice of the increase, and if ADT does not waive the increase, then I may terminate this Contract effective thirty (30) days after ADT's receipt of my written notice of termination. In this situation, I will not have to pay the contract termination charges described in Paragraph 2 above.

**4. ALARM PERMITS; ADDITIONAL CHARGES AND OFFSET RIGHTS.** Certain government agencies require me to pay for and maintain alarm use permits to receive ADT services. I agree to pay all installation and alarm use permit fees; all directly or indirectly imposed false alarm fines, fees or charges; all telephone or signal transmission company charges; and all other assessments, fees and charges related to the alarm system. I agree to pay a service charge if an ADT representative responds to a service call or alarm at my premises because I improperly followed operating instructions; failed to properly lock or close a window, door or other protected point; or improperly adjusted CCTV cameras, monitors or accessories. If ADT owes me money when this Contract ends, ADT has the right to deduct from any refund owed me (A) service charges for thirty (30) days, if I fail to give the required written termination notice set forth in Paragraph 1 above; (B) any contract termination charges that I may owe as set forth in Paragraph 2 above; and (C) any other additional charges, amounts or deposits that I owe ADT. If the amount of the deduction equals or exceeds the amount that ADT owes me or if ADT owes me a credit of five dollars ($5.00) or less, ADT will not be obligated to refund any amounts to me.

### 5. LIMITATION OF LIABILITY.

**A. INSURANCE; WAIVER OF SUBROGATION. I AGREE THAT ADT IS NOT AN INSURER AND THAT ADT IS NOT PROVIDING ME WITH INSURANCE OF ANY TYPE. THE AMOUNTS I PAY ADT ARE NOT INSURANCE PREMIUMS AND ARE NOT RELATED TO THE VALUE OF MY PROPERTY, ANYONE ELSE'S PROPERTY LOCATED IN MY PREMISES OR ANY RISK OF LOSS AT MY PREMISES. INSTEAD, THE AMOUNTS ADT CHARGES ME ARE BASED SOLELY UPON THE VALUE OF THE EQUIPMENT AND SERVICES ADT PROVIDES AND UPON THE LIMITED LIABILITY ADT ASSUMES UNDER THIS CONTRACT. IF I WANT INSURANCE TO PROTECT AGAINST ANY RISK OF LOSS AT MY PREMISES, I WILL PURCHASE IT. IN THE EVENT OF ANY LOSS, DAMAGE OR INJURY, I WILL LOOK EXCLUSIVELY TO MY INSURER AND NOT TO ADT TO COMPENSATE ME OR ANYONE ELSE. I RELEASE AND WAIVE FOR MYSELF AND MY INSURER ALL SUBROGATION AND OTHER RIGHTS TO RECOVER AGAINST ADT ARISING AS A RESULT OF THE PAYMENT OF ANY CLAIM FOR LOSS, DAMAGE OR INJURY.**

**B. NO GUARANTEE; NO LIABILITY. ADT'S EQUIPMENT AND SERVICES DO NOT CAUSE AND CANNOT ELIMINATE OCCURRENCES OF THE EVENTS THEY ARE INTENDED TO DETECT OR AVERT, INCLUDING, BUT NOT LIMITED TO, FIRES, FLOODS, BURGLARIES, ROBBERIES AND MEDICAL PROBLEMS. OTHER THAN THE LIMITED WARRANTY AND/OR QUALITY SERVICE PLAN SET FORTH IN PARAGRAPHS 10, 11 AND 12 BELOW, ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, THAT THE EQUIPMENT AND SERVICES PROVIDED WILL DETECT OR AVERT SUCH INCIDENTS OR THEIR CONSEQUENCES. ADT DOES NOT UNDERTAKE ANY RISK THAT I OR MY PROPERTY, OR THE PERSON OR PROPERTY OF OTHERS, MAY BE SUBJECT TO INJURY OR LOSS IF SUCH AN EVENT OCCURS. THE ALLOCATION OF SUCH RISK REMAINS WITH ME, NOT ADT. I RELEASE, WAIVE, DISCHARGE AND PROMISE NOT TO SUE OR BRING ANY CLAIM OF ANY TYPE AGAINST ADT FOR LOSS, DAMAGE OR INJURY RELATING IN ANY WAY TO THE EQUIPMENT OR SERVICES PROVIDED BY ADT.**

**C. EXCLUSIVE REMEDY.** IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES, IF ANY, THAT MAY RESULT FROM A FAILURE BY ADT TO PERFORM ANY OF ITS OBLIGATIONS. UNDER NO CIRCUMSTANCES WILL I ATTEMPT TO HOLD ADT LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY. IF, NOTWITHSTANDING THE PROVISIONS OF THIS PARAGRAPH 5, ADT IS FOUND LIABLE FOR LOSS, DAMAGE OR INJURY UNDER ANY LEGAL THEORY RELATING IN ANY WAY TO THE SERVICES AND/OR EQUIPMENT PROVIDED BY ADT, ADT'S LIABILITY TO ME SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $500, WHICHEVER IS GREATER. THIS AGREED-UPON AMOUNT IS NOT A PENALTY. RATHER, IT IS MY SOLE REMEDY. UPON MY REQUEST, ADT MAY AGREE TO ASSUME LIABILITY BEYOND WHAT IS PROVIDED FOR IN THIS PARAGRAPH 5 BY ATTACHING AN AMENDMENT TO THIS CONTRACT SETTING FORTH THE EXTENT OF ADT'S LIABILITY AND THE ADDITIONAL CHARGES TO ME.

**D. APPLICATION.** THE PROVISIONS OF THIS PARAGRAPH 5 APPLY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE OCCURS, EVEN IF DUE TO THE PERFORMANCE OR NONPERFORMANCE BY ADT OF ITS OBLIGATIONS UNDER THIS CONTRACT OR FROM NEGLIGENCE (ACTIVE OR OTHERWISE), STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER THEORY OF LIABILITY OR ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR ITS EMPLOYEES.

**E. INDEMNITY.** IF ANY OTHER PERSON, INCLUDING MY SUBROGATING INSURER, MAKES ANY CLAIM OR FILES ANY LAWSUIT AGAINST ADT IN ANY WAY RELATED TO (1) THE EQUIPMENT OR SERVICES PROVIDED BY ADT TO ME OR (2) ANY INACCURACIES IN ANY PERSONAL INFORMATION, INCLUDING ANY CONTACT INFORMATION, PROVIDED BY ME TO ADT IN ORDER FOR ADT OR ITS REPRESENTATIVES TO COMMUNICATE WITH ME FOR ANY REASON, INCLUDING TELEPHONE CALLS, TEXT MESSAGES OR EMAILS REGARDING MY ADT SERVICES OR NEW ADT OR THIRD-PARTY PRODUCTS AND SERVICES, THEN I AGREE TO INDEMNIFY, DEFEND AND HOLD ADT HARMLESS FROM ANY AND ALL SUCH CLAIMS AND LAWSUITS, INCLUDING THE PAYMENT OF ALL DAMAGES, EXPENSES, COSTS AND ATTORNEYS' FEES. MY DUTY TO DEFEND IS SEPARATE AND DISTINCT FROM MY DUTY TO INDEMNIFY AND HOLD HARMLESS AND ARISES UPON THE ASSERTION OF A CLAIM OR DEMAND AGAINST ADT AND REGARDLESS WHETHER ADT HAS BEEN FOUND LIABLE OR WHETHER ADT HAS INCURRED ANY EXPENSE.

**F. TIME TO BRING CLAIM OR SUIT.** NO SUIT OR ACTION SHALL BE BROUGHT AGAINST ADT AFTER THE SHORTER OF (1) ONE YEAR AFTER THE DATE OF LOSS OR (2) THE TIME ALLOWED BY LAW.

**G. BENEFIT TO OTHERS.** THE PROVISIONS OF THIS PARAGRAPH 5 SHALL APPLY TO AND BENEFIT ADT AND ITS AGENTS, EMPLOYEES, CONTRACTORS, SUBSIDIARIES, DEALERS, AFFILIATES, PARENTS (BOTH DIRECT AND INDIRECT), AFFINITY MARKETERS AND OTHER PARTNERS.

**6. OTHER PARTY'S LIMITATION.** If I purchased equipment or services from ADT through another business or person, or from ADT through a referral from another business or person, I agree that such other business or person acts solely as an independent contractor and has no responsibility or liability to me for the performance or nonperformance of the equipment or services provided by ADT. I also agree that any such business or person is entitled to the same rights as ADT under this Contract, including Paragraph 5.

©2020 ADT.
All rights reserved. (EA300UE05 11/21)

## IMPORTANT TERMS AND CONDITIONS

**7. ARBITRATION.** ADT AND I AGREE THAT ANY AND ALL DISPUTES BETWEEN US SHALL BE GOVERNED BY THIS BINDING ARBITRATION AGREEMENT. Arbitration is a dispute-resolution process that does not involve a judge or jury. Instead, Disputes are decided by a neutral third-party arbitrator in a process that is less formal than court. As used herein, the term "Dispute" means any claim or controversy, including, but not limited to, initial claims, counterclaims, cross-claims and third-party claims, whether based in contract; tort; fraud; intentional acts; violation of any statute, code or regulation; or other legal theory. The term "Dispute" shall be given the broadest possible meaning and will apply to, without limitation, all claims and controversies arising from this Agreement; sales activities; goods and services; advertisements, promotions and other statements; billing and collection practices; privacy; and any other dispute arising from my interaction or relationship with ADT. ADT agrees not to elect arbitration if I file a Dispute in a small claims court in my state of residency so long as the Dispute is individual and non-representative in nature and remains exclusively as such in small claims court. Pre-Arbitration Notice Requirement. Before initiating an arbitration or a small claims matter, ADT and I agree to first provide to the other a written "Notice of Dispute" that will contain: (a) a written description of the issue and the supporting documents and information, and (b) a specific request for money or other relief. A Notice of Dispute to ADT should be sent to: Litigation Department, ADT Security Services, 1501 Yamato Dr., Boca Raton, FL 33431. ADT will mail a Notice of Dispute to my protected Premises address. ADT and I agree to make attempts to resolve the Dispute prior to commencing an arbitration or small claims action. If an agreement cannot be reached within forty-five (45) days of receipt of the Notice of Dispute, ADT or I may commence an arbitration proceeding or small claims action. Initiation of Arbitration Proceeding. If either party elects to arbitrate a Dispute, the Dispute shall be resolved by arbitration pursuant to this Arbitration Agreement and the then-current code of proceedings of the national arbitration organization to which the Dispute is referred. A party may refer a Dispute to either the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediation Services ("JAMS"). If ADT elects arbitration and chooses one of the organizations to administer, I may object and automatically have the other organization administer the proceedings simply by notifying ADT of my objection in writing within 30 days of my receipt of ADT's initial selection. To obtain a copy of the procedures, or to file a Dispute, I may contact the organizations at the following: (1) AAA, 335 Madison Avenue, New York, NY 10017, www.adr.org, and (2) JAMS, 1920 Main Street, Suite 300, Los Angeles, CA 92614, www.jamsadr.com. IF EITHER PARTY ELECTS TO ARBITRATE A DISPUTE, ADT AND I WAIVE THE RIGHT TO A JURY TRIAL AND TO OTHERWISE LITIGATE THE DISPUTE IN COURT. BY AGREEING TO ARBITRATE, THE PARTIES MAY ALSO WAIVE OTHER RIGHTS THAT WOULD OTHERWISE BE AVAILABLE IN COURT. FURTHER, IF EITHER PARTY ELECTS TO ARBITRATE A DISPUTE, I WAIVE MY RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR TO PARTICIPATE AS A MEMBER OF ANY CLASS ACTION RELATING TO THE DISPUTE. This means that all Disputes selected for arbitration will be arbitrated on an individual basis, between ADT and me only, without exception. A Dispute cannot be joined or consolidated with any other claim or action. Arbitration Proceedings. Because my transaction(s) with ADT involves interstate commerce, this Arbitration Agreement and any Dispute arbitrated hereunder shall be governed by the Federal Arbitration Act ("FAA"). The JAMS or AAA code of procedures, as chosen, will govern the arbitration, but if there is a conflict between the applicable code of procedures and this Arbitration Agreement, this Arbitration Agreement shall control to the fullest extent permitted by the FAA. Unless otherwise agreed to by the parties, the arbitration will be conducted by a single, neutral arbitrator at a location within the federal judicial district in which I reside. Upon my request, ADT will reimburse me for all filing and administrative fees required for initiating the arbitration. Otherwise, each party is responsible for its own respective costs and fees, including, but not limited to, attorney and expert fees. The arbitrator shall apply applicable substantive law and, upon the request of either party, issue a written explanation of the basis for the decision. Judgment on the arbitration award may be entered in any court having proper jurisdiction. EXCEPT AS FOLLOWS, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. A party may appeal the arbitrator's initial award to a three-arbitrator panel administered by the same arbitration organization upon written notice within 30 days of the initial award. The arbitration organization will notify the other party of the appeal. The panel shall consider any aspect of the initial award objected to by the appealing party and issue a decision within 120 days of the date of the notice of appeal. The majority decision by the three-member panel shall be final and binding. Any dispute regarding the applicability, enforcement or interpretation of Paragraph 5 or this Paragraph 7, shall be resolved by a court having proper jurisdiction. This Arbitration Agreement will not prevent me from bringing a Dispute to the attention of any federal, state or local government agency. This Arbitration Agreement shall survive termination of this Agreement.

**8. OWNERSHIP AND PAYMENT OBLIGATION.** All equipment installed by ADT pursuant to this Contract shall be owned by ADT except as otherwise agreed in writing. If there is existing, previously-installed equipment and it is my property, it shall remain my property. If any equipment is owned by ADT, ADT has the right upon termination of this Contract to remove, disable or abandon all or any of the equipment owned by ADT. If any equipment is disabled or removed by ADT, I understand that I will not be able to use the equipment for any purpose. I will provide access to ADT-owned equipment for removal and ADT will have no obligation to repair or redecorate my premises after any such removal. ADT may, at its sole discretion and upon termination of this Contract, waive its right to remove the equipment installed under this Contract by allowing me to make an additional payment in an amount to be determined by ADT at the time of contract termination. All ADT yard signs and window stickers provided to me at any time will remain the property of ADT and may be removed by ADT. I agree to pay the installation costs described in Section 2. I UNDERSTAND THAT FINANCING MAY BE AVAILABLE FOR THE INSTALLATION COST AND AGREE THAT (A) I MAY NOT BE APPROVED FOR ANY FINANCING FOR INSTALLATION COSTS AND (B) I WILL NOT BE NOTIFIED OF WHETHER FINANCING HAS BEEN APPROVED UNTIL THE DATE THE EQUIPMENT IS INSTALLED. UNLESS I AM LATER APPROVED FOR FINANCING FROM ADT, I WILL BE REQUIRED TO PAY THE FULL AMOUNT OF THE TOTAL INSTALLATION COST IN A SINGLE INSTALLMENT ON THE DATE THE EQUIPMENT IS INSTALLED.

**9. INSTALLATION.** The equipment that ADT installs under this contract may be new or refurbished. In order for ADT to install and service the equipment listed on this Contract, I agree that: (A) I own the premises or have authority to authorize ADT to install the alarm equipment at the premises; (B) I will make the premises available without interruption during ADT's normal working hours and will maintain the premises in a safe and sanitary condition suitable for work to be performed by ADT's representatives without jeopardizing their health or safety; (C) the installation will require drilling into various walls and other parts of the premises; (D) I will provide ADT with 110 AC electrical outlets for power equipment in locations designated by ADT; (E) I will pay for and provide compatible Internet connectivity, if applicable; (F) I will make arrangements for lifting and replacing carpeting, if required, for ADT's installation of floor mats or wiring; (G) ADT may not be able to conceal any or all equipment or wiring; (H) ADT will not be liable for property damage, personal injury, illness or other loss due to water intrusion, mold, fungi, wet or dry rot or bacteria that may result from the installation services; and (I) my premises complies with all applicable codes, regulations and laws and will continue to comply with all applicable codes, regulations and laws during the initial term and any renewal terms of this Contract. If applicable, ADT will attempt to connect the existing, previously-installed alarm system to ADT's monitoring center. Prior to connection, ADT has the right to inspect my system and my premises to determine eligibility for Extended Limited Warranty/ QSP coverage and may notify me of any required repair/replacement costs related to the existing alarm system, device(s) or connection. If I decline to pay such repair/replacement costs, ADT is not obligated to connect to the existing alarm system and may terminate this Contract without liability to ADT. If the existing alarm system is connected to ADT's monitoring center, ADT will have no liability for the maintenance, operation, non-operation, actuation, non-actuation or erroneous actuation of the existing alarm system, connection or device(s), and any repairs will be performed on a time and material basis by ADT, subject to available parts, except for repairs/replacements covered by Extended Limited Warranty/QSP coverage if such coverage is provided under this Contract. ADT shall not be liable for any losses whatsoever resulting from installation or other services either performed by me or a third-party provider engaged by me. I acknowledge and understand that any third-party provider engaged by me is not an employee, subcontractor, or agent of ADT and that any payment obligations to such provider are my sole responsibility.

**10. LIMITED WARRANTY.** During the first 90 days after installation, ADT will repair or, at its option, replace any defective part of the equipment ADT supplies and installs, including wiring, and will make required mechanical adjustments, all at no charge to me. If I am provided equipment for self-install, the 90-day warranty period for such equipment shall commence on the order date and will cover replacement equipment only. ADT will use new or refurbished parts for replacements. This limited warranty is for my benefit only and may not be enforced by any other person. This limited warranty gives me specific legal rights. The laws of the state where this Contract was signed may also give me additional rights. To order service, call 800.ADT.ASAP (800.238.2727). This limited warranty, and if purchased, the extended limited warranty, provided below, shall replace any other equipment warranty, including without limitation the manufacturer warranty.

**11. EXTENDED LIMITED WARRANTY/QUALITY SERVICE PLAN (QSP).** If I purchase ADT's Extended Limited Warranty, which is called the Quality Service Plan or QSP, ADT will repair or, at its option, replace any part of the equipment supplied by ADT that requires repair or replacement due to malfunction, excluding wiring and batteries. During the Extended Limited Warranty period, I will be charged a non-refundable on-site assessment charge in the amount of $59 for each service call booking for an ADT technician to visit my premises for QSP service. On-site assessment charges may vary depending on the geographic location of the premises. ADT has the right to change the QSP on-site assessment charge at any time by posting updated and current on-site assessment rates to www.MyADT.com. It is your responsibility to check this link periodically for changes. ADT will use new or refurbished parts for replacements. If I require services excluded from the QSP (see Paragraph 12 below for exclusions), then ADT will provide the services at its current labor rate for each service call. The QSP and the billing for it will commence on the date the alarm system is installed, operational and communicating with ADT's CMC and will continue for the term of this Contract. The QSP will automatically renew for successive thirty (30)-day terms at ADT's then-current QSP rate unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If I purchase the QSP after the initial system installation, the alarm system must be in good working condition at the time I purchase the QSP. To purchase the QSP, call 800.238.7085.

©2020 ADT.
All rights reserved. (EA300UE05 11/21)

## IMPORTANT TERMS AND CONDITIONS

**12. WARRANTY EXCLUSIONS.** ADT performs warranty services only during normal working hours. If I request ADT to perform warranty services outside normal working hours, I will pay for the services at ADT's then-current rates for labor, parts and equipment. The limited warranty provided under this Contract and, if purchased, the QSP do not apply if ADT determines upon inspection that any of the following conditions caused the need for service: (A) damage resulting from accidents, theft, Acts of God, natural disasters, labor disputes, war, terrorism, civil strife, electrical surge, alterations or misuse; (B) my failure to properly close or secure a door, window or other point protected by an alarm device; (C) my failure to properly follow the operating instructions; (D) trouble in a telephone line, use of non-traditional telephone line or service (including but not limited to DSL, ADSL, VoIP, digital phone, internet-based phone, cellular, radio, etc.) or due to interruption of power; (E) loss or disruption of Internet connectivity; (F) repairs needed to window foil, security screens, exterior mounted devices (except for outdoor cameras, doorbells and door locks) or PROM (Programmable Read Only Memory); (G) ordinary wear and tear; (H) alterations to my premises or failure of my premises to comply with any applicable codes, regulations or laws; or (I) alterations or damage to the alarm system caused by me or by a cause beyond ADT's control. The limited warranty provided under this Contract and, if purchased, the QSP do not apply to household systems or devices not supplied by ADT but connected to my alarm system for automation, alert or similar purposes, including but not limited to, thermostats, heating/air conditioning systems, lighting systems, doors, locks, garage doors, fans, blinds, shutters or appliances. ADT will not perform warranty services on (i) any device not supplied by ADT even if installed by ADT; (ii) smoke or carbon monoxide detectors that have been installed for longer than five (5) years; or (iii) any part, system or device that has been discontinued or is no longer supported by the device manufacturer. Additionally, I understand that I may be required to pay for the installation of new equipment if the installed equipment is, in whole or in part, discontinued or is no longer supported by the device manufacturer and my failure to pay for the installation of said new equipment shall not relieve me of my obligation to pay any amounts owed for service hereunder. Battery replacement is excluded from all warranties. THE EQUIPMENT PROVIDED BY ADT UNDER THIS CONTRACT OR OTHERWISE MAY NOT BE COMPATIBLE WITH AND MAY NOT OPERATE WITH OTHER THIRD PARTY ALARM OR HOME AUTOMATION SERVICES. The limited warranty and the QSP do not apply to promotional items or gifts.

**13. NO OTHER WARRANTIES. OTHER THAN THE LIMITED WARRANTY PROVIDED UNDER THIS CONTRACT AND, IF PURCHASED, THE QSP, I AGREE THAT ADT MAKES NO GUARANTEE OR WARRANTY OF ANY KIND, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES ADT PERFORMS OR THE EQUIPMENT IT PROVIDES. MY EXCLUSIVE WARRANTY REMEDY IS SET FORTH IN PARAGRAPHS 10, 11 AND 12 ABOVE. SOME STATES MAY NOT ALLOW THE PARTIES TO A CONTRACT TO LIMIT THE LENGTH OF AN IMPLIED WARRANTY. THE LAWS OF THE STATE WHERE THIS CONTRACT WAS SIGNED WILL DETERMINE WHETHER THESE LIMITATIONS AND EXCLUSIONS APPLY.**

**14. ALARM MONITORING AND NOTIFICATION SERVICE.** If I purchase service that includes response by police, fire department, guard, medical emergency notification or two-way voice monitoring services and such an alarm is received at ADT's CMC, ADT may, at its sole discretion, attempt to contact me and/ or anyone on my Emergency Contact List to confirm that the alarm is not false. If ADT does not contact me and/or someone on my Emergency Contact List, or if ADT questions the response it receives upon such contact, then (A) ADT will attempt to notify the appropriate police department or fire department or, (B) if guard response service is provided and an alarm requires police response, ADT will attempt to dispatch a representative to make an investigation of the exterior of the premises from his or her vehicle and, upon evidence of a crime, ADT will attempt to notify the appropriate police department. If ADT provides supervisory alarm or trouble alarm monitoring services (or if such services are actively programmed into the alarm system) and ADT's CMC receives an alarm, then ADT may attempt to notify my premises and/or the representative I designate. ADT may use an automated calling device to deliver such notification. If medical emergency notification services are provided, I agree that the very nature of such services, regardless of any delay, involves uncertainty, risk and possible serious injury, disability or death, for which I will not attempt to hold ADT responsible or liable; that the equipment furnished for medical emergency notification services is not foolproof and may experience signal transmission failures or delays for any number of reasons; and that the actual time required for medical emergency providers to arrive at my premises and/or to transport any person requiring medical attention is unpredictable with many contributing factors, including telephone network operation, distance, weather, road and traffic conditions, alarm equipment function and human factors both within and outside of ADT's control. The person(s) identified on my Emergency Contact List are authorized to act on my behalf. Local laws, ordinances or policies may restrict ADT's ability to provide the alarm monitoring and notification services described in this Contract and/or necessitate modified or additional services with additional charges to me. ADT employs a number of industry-recognized measures to help reduce occurrences of false alarms. These measures include, but are not limited to, implementation of default settings on alarm panels and various procedures at ADT's CMC to determine when and how to respond, if at all, to certain alarm events. I consent to ADT's use of these measures and agree that the alarm system has not been designed, programmed or installed pursuant to any law, code or rule that may be applicable to my particular premises, including, but not limited to, any code provisions of the National Fire Protection Association or the International Residential Code. Upon receiving notification that an alarm signal has been received by ADT, the police department, fire department or other responding authority may forcibly enter my premises. ADT will never arrest or detain any person for any reason. If my service includes cameras or equipment with audio recording and/or monitoring, I will comply with all federal, state and local laws governing the placement, presence, operation and use of such equipment, including without limitation privacy, video surveillance, eavesdropping and wiretapping laws and shall fully and conspicuously notify persons in or around the premises or equipment, whether by use of legible signs or other approved communications, that their activities may be recorded. I agree that the equipment installed by ADT, including any outdoor camera, is not to be used to monitor activity in or near any swimming pool or other body of water and that I alone am responsible for supervising the well being of any person in or near any swimming pools or other bodies of water on the premises. If video or audio verification of alarm events at my premises is included with my services or equipment, I agree and understand that ADT and First Responders will access and view images, audio and other data captured by the equipment at my premises and endeavor to use these images and other data to provide visual or audio verification of an alarm event. Further, I understand and acknowledge the inherent limitations associated with visual and audio verification, including without limitation, (i) inadequate illumination of viewing area; (ii) physical obstructions in the field of view of the video camera, (iii) inadequate receipt, clarity, placement or quality of the images and (iv) uncertainty regarding the source of the audio content. ADT does not guarantee that viewing the images or listening to audio captured by the equipment will result in effective verification of events requiring alarm response. I assume full responsibility for: (a) the placement, direction and presence of equipment; (b) transmission, transfer or other use of any images, audio or other data captured by the equipment; (c) the manner of use of the equipment or data captured by the equipment; (d) complying with all applicable laws, rules, regulations and ordinances in connection with the use and operation of the equipment.

**15. FAMILIARIZATION PERIOD.** UNLESS I HAVE REJECTED THE FAMILIARIZATION PERIOD BY INITIALING THE APPROPRIATE LINE ON THE FIRST PAGE OF THIS CONTRACT (EXCEPT WHERE FAMILIARIZATION IS REQUIRED BY LAW), I AGREE THAT, DURING A SEVEN (7)-DAY FAMILIARIZATION PERIOD, OR LONGER PERIOD IF REQUIRED BY LAW, THAT FOLLOWS COMPLETION OF THE INSTALLATION AND THE COMMUNICATIONS CONNECTION TO ADT'S CMC (AND DURING ANY APPLICABLE EXTENSIONS), ADT HAS NO OBLIGATION TO, AND WILL NOT, RESPOND TO ANY ALARM SIGNAL FROM MY PREMISES. I ALSO AGREE THAT DURING SUCH PERIOD ADT HAS NO OBLIGATION TO, AND WILL NOT, NOTIFY ANY AUTHORITIES, ME OR MY DESIGNATED REPRESENTATIVE OR TAKE ANY OTHER ACTION WITH REGARD TO ANY ALARM SIGNAL ADT RECEIVES, EVEN IF DUE TO AN ACTUAL EMERGENCY.

**16. FAILURE TO PAY CHARGES OR HONOR CONTRACT.** If I fail to make any payment when due or to honor any other term or condition of this Contract, ADT may terminate this contract and/or stop providing the alarm monitoring and notification services and repossess or disable the equipment without notice. ADT has no liability if it stops providing the alarm monitoring and notification services and repossesses or disables the equipment. If ADT terminates this Contract due to my failure to honor any term of this Contract and ADT has incurred costs before payment in full is received for all Installation Charges, ADT may deduct its costs from any deposit I provide to ADT, in addition to any other legal remedy available. ADT is not required to redecorate or repair my premises as a result of repossessing or disabling the equipment. In addition to these remedies, ADT does not waive, and retains the right to exercise, any other legal remedy, including the right to charge me a late fee for each month that a payment is not received and/or interest on the unpaid amount and the right to report me to one or more consumer reporting agencies if I become delinquent on my account (more than 90 days without a payment).

**17. SMOKE AND CARBON MONOXIDE DETECTORS. IF THE ALARM SYSTEM INCLUDES SMOKE AND/OR CARBON MONOXIDE DETECTORS, I AGREE THAT: (A) THE NUMBER AND PLACEMENT OF SUCH DETECTORS MAY NOT FULFILL THE REQUIREMENTS OR RECOMMENDATIONS IN CODES, LAWS OR STANDARDS THAT APPLY IN MY JURISDICTION, INCLUDING THE CODE PROVISIONS OF THE NATIONAL FIRE PROTECTION ASSOCIATION AND THE INTERNATIONAL RESIDENTIAL CODE; (B) I HAVE SOLE RESPONSIBILITY FOR COMPLYING WITH ANY AND ALL CODES, LAWS AND STANDARDS THAT MAY APPLY TO THE INSTALLATION, PLACEMENT AND MAINTENANCE OF THE ALARM SYSTEM; AND (C) ANY SMOKE AND/OR CARBON MONOXIDE DETECTORS DESCRIBED IN THIS CONTRACT ARE SUPPLEMENTAL DEVICES ONLY AND ARE NOT INTENDED TO BE PART OF A PRIMARY FIRE ALARM OR CARBON MONOXIDE DETECTION SYSTEM.** I understand that ADT's electrical smoke and carbon monoxide detectors, if installed in my premises, are designed to be connected to an electrical power source. THESE DETECTORS WILL NOT OPERATE, THE ALARM WILL NOT SOUND AND THE ALARM SIGNAL WILL NOT BE TRANSMITTED WHEN: THE ELECTRICITY IS CUT OFF; THE BACK-UP BATTERY, IF INCLUDED AS PART OF THE SYSTEM, IS LOW OR DEAD; OR FIRE CUTS OFF THE ELECTRICITY BEFORE THE ALARM IS ACTIVATED, SOUNDS AND IS TRANSMITTED. Connecting these detectors to a separate dedicated electrical circuit may increase their reliability, but even dedicated circuits can fail. I understand that these detectors all have limited useful lives, after which time they will not function. It is my sole responsibility to monitor and replace all detectors before or at the end of their useful lives.

©2020 ADT.
All rights reserved. (EA300UE05 11/21)

DocuSign Envelope ID: 56AEAE8E-59AB-4E01-B6C4-57A6B5B86CF1

## IMPORTANT TERMS AND CONDITIONS

**18. BATTERY-POWERED DEVICES; WIRELESS DEVICES.** I understand that all battery-powered motion detectors, smoke detectors, door and window contact transmitters and other detection sensors installed under this Contract are not connected to the electrical system of my premises and require batteries to operate. THESE BATTERY-POWERED DETECTION SENSORS WILL NOT OPERATE, AND THE ALARM WILL NOT SOUND, IF THE BATTERIES ARE LOW OR DEAD. It is my sole responsibility to maintain and replace these batteries. ADT recommends that I regularly inspect the sensors for dirt and dust buildup and test the sensors weekly to help maintain continued operation. ADT also recommends that I carefully read and follow the owner's manual, instructions and warnings for all equipment. I understand that wireless devices, including but not limited to wireless motion detectors, door and window contacts, smoke detectors and other wireless devices installed by ADT will not communicate with the alarm system and THE ALARM SYSTEM WILL NOT FUNCTION IF WIRELESS COMMUNICATION FOR THE DEVICES IS IMPAIRED. THESE WIRELESS DEVICES MAY OR MAY NOT USE ENCRYPTION AND/OR AUTHENTICATION TECHNOLOGY AND ARE VULNERABLE TO INTENTIONAL OR UNITENTIONAL INTERRUPTION, INTERCEPTION, CORRUPTION AND TAMPERING. It is possible for persons with criminal intent to reduce the effectiveness of my alarm system, including intercepting or hacking the wireless signals of my ADT equipment.

**19. ALARM SYSTEM COMMUNICATION.** I authorize ADT to request service from a telephone, wireless or other communication carrier under this Contract (referred to as "Telephone Company") to transmit signals between my alarm system and ADT's CMC. The Telephone Company's liability is limited to the same extent as ADT's liability in Paragraph 5 of this Contract. ADT will not receive alarm signals when the communication mode is not operating or has been cut, interfered with or is otherwise damaged, or if the alarm system is unable to acquire, transmit or maintain an alarm signal over my communication mode for any reason. If ADT determines in its sole discretion that my communication mode is or later becomes non-compatible, or if I change to another communication mode that is not compatible, then ADT requires that I use an alternate mode of communication acceptable to ADT as the method to connect the alarm system to ADT's CMC. Transmission of fire alarm signals by means other than a traditional telephone line may not be in compliance with applicable fire alarm or other standards or codes, and it is solely my obligation to comply with such standards and codes. If the alarm system has a line-cut feature, it may not always be able to detect if my communication line is cut or interrupted. ADT recommends that I test the alarm system monthly, even though a successful test of the alarm system does not guarantee that ADT will receive alarm signals from the system in the future. If my service includes ADT ® interactive solutions and/or automation features, ADT may directly or through third party service providers, transmit, record, store, provide and receive unencrypted data, images, and e-mails and text messages via the Internet in the course providing those interactive services. I will not be able to utilize those automation functions or receive e-mail or text alerts if my Internet connection is impaired, disrupted or unavailable for any reason. ADT does not warrant or guarantee the integrity, accuracy, confidentiality or security of any such transmission or from any unauthorized or unexpected use, disclosure, corruption, interception or other improper act.

**20. CANCELLATION.**

**A.** ADT may, at any time, cancel this Contract at its option if: (1) ADT's CMC is destroyed or damaged so that it is impractical for ADT to continue service; (2) ADT cannot acquire or retain the transmission connections or authorization to transmit signals between my premises and its CMC or the applicable fire or police department or other agency, or between ADT's CMC and the applicable fire or police department or other agency; (3) I fail to follow ADT's recommendations to repair or replace any defective parts of the system not covered under the Limited Warranty or, if purchased, QSP; (4) I fail to follow ADT's operating instructions for the alarm system; or (5) ADT determines that it is impractical to continue service due to the modification or alteration of my premises after installation. If ADT cancels for any of the reasons stated immediately above, ADT will refund any advance payments made for services to be supplied after the date of such termination, less any amounts still due for the installation of the equipment, for services already rendered and for any other charges due. Additionally, ADT will not assess contract termination charges, if any, as described in Paragraph 2 above.

**B.** ADT may cancel this Contract upon written notice to me if: (1) I fail to pay any monies when due under this Contract, (2) I change to a telephone/ communications service not suitable for alarm signal transmission or (3) I fail to comply with any other term or condition of this Contract. Upon receipt of written notice from ADT, I will have ten (10) days to correct the deficiency. If I do not correct the deficiency in a timely manner, and ADT does cancel this Contract, ADT may assess contract termination charges, if any, as described in Paragraph 2 above.

**21. ASSIGNMENT.** I may not assign this Contract without prior written consent from ADT. ADT does have the right to assign this Contract or to subcontract any of its obligations under this Contract without my approval and without notice to me.

**22. DELAYS.** ADT HAS NO RESPONSIBILITY OR LIABILITY TO ME OR ANY OTHER PERSON FOR DELAYS IN THE INSTALLATION OR REPAIR OF THE SYSTEM, REGARDLESS OF THE CAUSE. ADT HAS NO RESPONSIBILITY OR LIABILITY FOR INTERRUPTIONS OF SERVICE OR ANY RESULTING CONSEQUENCES, WHETHER DUE TO STRIKE, RIOT, FLOOD, FIRE, TERRORISM, ACT OF GOD OR ANY OTHER CAUSE WITHIN OR BEYOND ADT'S CONTROL. IF THERE ARE SERVICE INTERRUPTIONS, ADT HAS NO OBLIGATION TO SUPPLY ME WITH SUBSTITUTE SERVICES.

**23. PERSONAL INFORMATION.** I consent to ADT's use of my personal information and that of third parties provided by me for the purpose of monitoring, setting up and administering my ADT services (including credit approval, invoicing and collecting) and providing information on new equipment or services. I consent to ADT recording my telephone conversations with ADT representatives. I have obtained the consent of the third parties, whose personal information I provided to ADT, to use such personal information for the administration of my account with ADT. ADT may collect, use, disclose and transfer my personal information, and that of third parties provided by me, to ADT's parents, affiliates, subsidiaries and successor corporations, any subcontractor or assignee of this Contract or any applicable authority having jurisdiction that requests such information to administer alarm monitoring services or alarm system license, permit or similar programs.

**24. PRIVACY POLICY.** ADT maintains a privacy policy at www.ADT.com/privacy that is applicable to the terms, conditions and obligations of the parties to this Contract.

**25. SOFTWARE** All software is proprietary to ADT and/or ADT's suppliers and is licensed or sublicensed to me on a non-exclusive basis. I will not (a) disclose the software or any source code for the software to any third parties, (b) duplicate, reproduce, reverse engineer, modify, create derivative works from or copy all or any part of the software, or (c) use the software on equipment other than the equipment covered by this Contract. ADT is not responsible or liable for any damages to or changes in the performance of my computer following installation of any software or provision of services under this Contract. I agree to receive any software updates and upgrades that ADT or its contractors send or remotely download. The equipment or services provided by ADT under this Contract may not operate and ADT may not receive alarm signals during the updating and upgrading process.

**26. ENTIRE AGREEMENT.** This Contract constitutes the entire agreement between the parties. I am not relying on ADT's advice or advertisements. ADT is not bound by any representation, promise, condition, inducement or warranty, express or implied, that is not included in writing in this contract. The terms and conditions of this contract apply as written without alteration or qualification, unless a change is approved in writing by an ADT authorized representative. The terms and conditions of this Contract shall control and govern even if there are other documents with inconsistent or additional terms and conditions. If a court determines that any provision of this Contract is invalid or unenforceable, that provision shall be deemed amended and enforced to the maximum extent permitted by law. Each and every other provision of this Contract shall continue to be valid and enforceable.

**27. LICENSE INFORMATION:** CA ACO7155, Public Works Contractor 1000046587, Alarm Company Operators are licensed and regulated by the Bureau of Security and Investigative Services, Dept. of Consumer Affairs, Sacramento, CA 95814, The ADT Security Corporation PPO120288, (310) 619-2250, 974443. Work shall commence on the Estimated Installation Start Date. In the event the Estimated Date cannot be met, ADT will at first acknowledge, then notify me of the revised Estimated Installation Start Date. Commencement of the work shall be defined as work performed on site, including but not limited to, installation of wire and devices and/or ordering of materials and telephone facilities. Failure to substantially commence work within twenty (20) days from the Estimated Installation Start Date, without legal excuse, is a violation of the Alarm Company Act. Upon completion of the installation of the alarm system, ADT shall thoroughly instruct me in the proper use of the alarm system. Contractors are required by law to be licensed and regulated by the Contractors' State License Board, which has jurisdiction to investigate complaints against contractors if a complaint regarding a patent act or omission is filed within four years of the date of the alleged violation. A complaint regarding a latent act or omission pertaining to structural defects must be filed within 10 years of the date of the alleged violation. Any questions concerning a contractor may be referred to the Registrar, Contractors' State License Board, P.O. Box 26000, Sacramento, CA 95826. 800.321.2752.

©2020 ADT.
All rights reserved. (EA300UE05 11/21)

DocuSign Envelope ID: 56AEAE8E-59AB-4E01-B6C4-57A6B5B86CF1

 **Order Details**

Video Surveillance Solution

| Item | Install | Monthly |
|---|---|---|
| **HERE'S YOUR SYSTEM** | | |
| 1   [CON] - ATV 16 Channel Hybrid DVR 4TB | $200.00 | |
| System Plan Subtotal | $200.00 | |
| **HERE'S YOUR ADDED TECH** | | |
| 10   [CON] - ATV 2MP IP Vandal Dome, 2.9mm, IR, PoE, low Lux | $150.00 | |
| 2   [LABOR] - Additional Labor | $170.00 | |
| System & Added Tech Subtotal | $520.00 | |
| **REAL PROTECTION SERVICES** | | |
| [R-AddQSP-Included] - QSP | | $63.00 |
| Real Protection Services Subtotal | | $63.00 |
| **ADDITIONAL SAVINGS & DISCOUNTS** | | |
| Smart Discounts / Equipment & Installation | $-210.00 | |
| Smart Discounts / Monthly Service | | $-9.45 |
| Package Totals | $310.00 | $53.55 |
| **YOUR PAY IN FULL AFTER DISCOUNTS TOTAL** | **Install** | **Monthly** |
| System & Added Tech | $520.00 | $0.00 |
| Real Protection Services | | $63.00 |
| Activation + Permit Fees | $0.00 | $0.00 |
| (Less Discounts) | $-210.00 | $-9.45 |
| Total After Discounts | $310.00 | $53.55 |
| Estimated Taxes | $13.18 | $0.00 |
| Total After Estimated Taxes | $323.18 | $53.55 |
| Your Service Contract Term | 24 Months | |
| **Order Total** | **$323.18** | **$53.55** |

*The tax amounts shown are only estimates; the final amount will be calculated and detailed on your bill

( EA300UE05 11/21)

DocuSign Envelope ID: 56AEAE8E-59AB-4E01-B6C4-57A6B5B86CF1

 **NOTICE OF CANCELLATION OF RESIDENTIAL SERVICES CONTRACT**



5409UE02

11/28/2022

**DATE OF CUSTOMER APPROVAL**

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN 3 BUSINESS DAYS FROM THE ABOVE DATE OR WITHIN 5 BUSINESS DAYS IF YOU ARE A SENIOR CITIZEN. IF THIS TRANSACTION OCCURRED INVOLVED THE SALE OF A PERSONAL EMERGENCY RESPONSE UNIT, YOU HAVE 7 BUSINESS DAYS.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN 20 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, CALL 800.327.4348. YOU MAY ALSO CANCEL THIS TRANSACTION BY MAILING OR OTHERWISE DELIVERING THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO:

**ADT LLC dba ADT SECURITY SERVICES**

**SELLER**

AT
ATTN Sales Manager
3190 South Vaughn Way,
Aurora, CO, 80014

**ADT OFFICE ADDRESS**

**NOT LATER THAN MIDNIGHT OF: 12/1/2022**    OR SUCH LONGER PERIOD AS DESCRIBED ABOVE.

**I HEREBY CANCEL THIS TRANSACTION.**

| M | M | / | D | D | / | Y | Y |

**DATE**

**BUYER'S SIGNATURE**

7021 E Hidden Oaks Ln,
Orange, CA, 92867

**ADDRESS OF EQUIPMENT**

©2019 ADT.
All rights reserved. (02/19)

 **NOTICE OF CANCELLATION OF RESIDENTIAL SERVICES CONTRACT**



5409UE02

11/28/2022

**DATE OF CUSTOMER APPROVAL**

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN 3 BUSINESS DAYS FROM THE ABOVE DATE OR WITHIN 5 BUSINESS DAYS IF YOU ARE A SENIOR CITIZEN. IF THIS TRANSACTION OCCURRED INVOLVED THE SALE OF A PERSONAL EMERGENCY RESPONSE UNIT, YOU HAVE 7 BUSINESS DAYS.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN 20 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, CALL 800.327.4348. YOU MAY ALSO CANCEL THIS TRANSACTION BY MAILING OR OTHERWISE DELIVERING THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO:

**ADT LLC dba ADT SECURITY SERVICES**

---

SELLER

**AT**
ATTN Sales Manager
3190 South Vaughn Way,
Aurora, CO, 80014

---

ADT OFFICE ADDRESS

**NOT LATER THAN MIDNIGHT OF: 12/1/2022** OR SUCH LONGER PERIOD AS DESCRIBED ABOVE.

**I HEREBY CANCEL THIS TRANSACTION.**

M M / D D / Y Y
DATE

---

BUYER'S SIGNATURE
7021 E Hidden Oaks Ln,
Orange, CA, 92867

---

ADDRESS OF EQUIPMENT

©2019 ADT.
All rights reserved. (02/19)

# EXHIBIT "2"

**Loreana's Damages**

| Item | Value |
|------|-------|
| Gucci Marmont nude bag | $1,290.00 |
| Gucci GG M white shoulder bag | $2,980.00 |
| Gucci GG M matelasse white wallet | $795.00 |
| Gucci GG M keychain buddy wallet | $250.00 |
| Gucci GG white belt | $420.00 |
| Gucci GG nude belt | $378.00 |
| Gucci luggage bag | $2,133.00 |
| LV Siena PD D Ebe bag | $1,540.00 |
| LV azur | $620.00 |
| LV PO Zip Azur white | $1,350.00 |
| Valentino shoulder bag | $1,345.00 |
| Valentino Garavani wallet | $490.00 |
| Chanel L-Flap wallet | $1,050.00 |
| Chanel large bag | $2,450.00 |
| Chanel perfumes | $540.00 |
| Chanel earrings Extrait De Cameli | $5,800.00 |
| Chanel Coco bracelet | $1,650.00 |
| Tiffany vinatage oval key | $2,000.00 |
| Tivvany oval EOL Clasp | $1,950.00 |
| Tiffany bracelet Pmo | $1,566.00 |
| Tiffany heart tag bracelet | $525.00 |
| Tiffany 1937 Makers watch | $3,800.00 |
| Tag watch link | $2,550.00 |
| Kids' Jewlery (baptisim necklaces, bracelets, and earrings | $5,500.00 |
| **Total:** | $42,972.00 |

**Jeriess' Damages**

| Item | Value |
|------|-------|
| Brietling watch | $9,100.00 |
| TagHeuer Carrera | $3,000.00 |
| TagHeuer Carrera white face | $5,500.00 |
| Rolex classic | $12,000.00 |
| TagHeuer Sport | $1,300.00 |
| Gucci backpack | $2,500.00 |
| Ferragamo leather laptop bag grey | $2,200.00 |
| Cologne | $1,000.00 |
| Engraved Watch Case | $400.00 |
| LV wallet | $505.00 |
| Tumi wallet | $150.00 |
| Gucci wallet | $450.00 |
| Misc. small items, ties, etc. | $4,000.00 |
| Shirts | $2,000.00 |
| Shoes | $3,000.00 |
| Sults | $6,000.00 |

| | | |
|---|---|---|
| Laundry hamper | | $150.00 |
| Cash | | $50,000.00 |
| | **Total:** | $103,255.00 |
| Sales tax on taxable items: | | $7,457.59 |

**Property Damages**

| | | |
|---|---|---|
| Window | | $650.00 |
| Carpet cleaning | | $250.00 |
| Temporary window protection | | $250.00 |
| Moulding | TBD | |
| | **Total:** | $1,150.00 |
| | **Grand Total:** | $147,377.00 |